# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LUKE D. CONWELL,

        **Plaintiff,**

vs.

                                          Case No. 18−cv−0131−DRH

MARCUS MARVIN,
NURSE HOPE,
PICKFORD,
PEARL,
JEFFREY M. DENNISON,
HILLARD,
MICHAEL P. DUNNING,
ALFONSO DAVID, and
WEXFORD HEALTH SOURCES, INC.

        **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Luke Conwell, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks compensatory relief, punitive relief, and declarative relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.
An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

The Court's initial review of the Complaint suggests that there are parties and claims that are improperly joined in this action pursuant to Federal Rule of Civil Procedure 20 and 18. Thus, the Court must sever this action into separate cases.

## The Complaint

On March 20, 2017, Defendants Hope and Marvin were making rounds passing out evening medication in the intake area, where Plaintiff was housed. (Doc. 1, pp. 1-2). Plaintiff asked Marvin for some toilet paper. (Doc. 1, p. 2).

2

Marvin refused. *Id.* Plaintiff stuck his hand out of the chuckhole clutching the empty roll to show Marvin that he was truly out of toilet paper. *Id.* Marvin refused. (Doc. 1, p. 3). Plaintiff asked Marvin for a grievance form. *Id.* Marvin then began slamming the chuckhole cover on Plaintiff's hand and stabbing him with the large chuckhole key. (Doc. 1, pp. 3, 12). Plaintiff's hand began bleeding and swelling immediately. *Id.* Plaintiff alleges he had a large gash in the shape of the chuckhole key on his hand. *Id.* Marvin said "[n]ow write that up." (Doc. 1, p. 3).

Hope witnessed the entire incident and failed to intervene. *Id.* Hope also turned a deaf ear to Plaintiff's repeated requests for medical attention over the next 3 days. (Doc. 1, p. 4). She told him to place a sick call slip, but Plaintiff alleges that his sick call slips and grievances to Warden Dennison went unanswered. *Id.* A day shift nurse finally noticed Plaintiff's hand was infected on March 27, 2017. (Doc. 1, p. 5). Plaintiff was diagnosed with a severe infection and his injuries prompted an investigation against Marvin by internal affairs. (Doc. 1, pp. 6-7).

Defendants Pickford and Pearl investigated the incident, but Plaintiff alleges that they were biased against him from the start and tried to cover it up. (Doc. 1, pp. 7-9).

Plaintiff alleges that after he reported the incident, Defendants Marvin, Hope, Pickford, Pearl, Dennison, Hillard, Dunning, David, and Wexford all conspired to retaliate against him. (Doc. 1, pp. 9-10). In support of his

conspiracy allegations, Plaintiff alleges that Dennison stamped Plaintiff's grievance "received" on April 6, 2017, when Plaintiff submitted it on March 20, 2017. (Doc. 1, pp. 13-14). Plaintiff believes that Dennison deliberately back-dated his grievance and contacted Marvin so that Marvin could retaliate against Plaintiff. (Doc. 1, p. 14).

Plaintiff alleges that Marvin retaliated against him by moving him to a cell without power, when he knew that Plaintiff had a TV. (Doc. 1, pp. 14-15). Plaintiff believes Marvin further retaliated against him by causing the B. of I. officer to charge Plaintiff $500 for a new prison ID when the cost is $5.00. (Doc. 1, p. 15). Plaintiff alleges that it took weeks to have his trust fund account corrected. *Id*. Plaintiff also alleges that he was prevented from shopping at the commissary on July 7, 2017 by non-defendant Ashmore, which he believes is a further act of retaliation on Marvin's behalf. (Doc. 1, pp. 15-16). Plaintiff wrote a grievance about this issue, but Defendant Hillard, as part of the conspiracy, refused to process it because Plaintiff had requested demotions and transfers as his relief. (Doc. 1, p. 17). Hillard and Dennison refused to respond to other grievances Plaintiff filed. (Doc. 1, p. 18).

On August 17, 2017, Orange Crush conducted a shakedown of Plaintiff's housing unit. *Id*. Dunning shook down Plaintiff's cell. *Id*. Plaintiff complied with all of his orders. (Doc. 1, pp. 18-19). As Plaintiff exited the cell, Dunning pushed his head down in a violent manner. (Doc. 1, p. 19). Plaintiff told Dunning that he had "decentagrading" disc disease, but Dunning didn't listen and threw Plaintiff

into the wall outside of Plaintiff's cell. *Id.* Dunning then pushed Plaintiff's head down again as he was walking. *Id.* Plaintiff told Dunning not to put his hands on him. *Id.* Dunning pushed Plaintiff's head down again. (Doc. 1, p. 20). Plaintiff told Dunning to "relax, it's not that serious." *Id.* Dunning then pulled Plaintiff out of line, and slammed him into the concrete. *Id.* Plaintiff again tried to tell Dunning about his back problems, but Dunning began punching him in the head. *Id*. Dunning continued to assault Plaintiff while escorting him to segregation. *Id.* Dunning wrote Plaintiff a false disciplinary report. (Doc. 1, p. 22).

Plaintiff wrote multiple grievances and letters to Dr. David requesting medical care for his injuries after the August 17th incident, but David never responded. (Doc. 1, p. 23). The assault had aggravated Plaintiff's back condition, but David never renewed Plaintiff's pain medication. *Id*. Plaintiff apparently saw David at some point after he was released from segregation. (Doc. 1, p. 24). Plaintiff requested an MRI and referral to a specialist. *Id.* David denied the request, lowered Plaintiff's existing pain medication dosage, and prescribed naproxen. (Doc. 1, p. 25).

Plaintiff alleges that Wexford is responsible for the actions of its employees. (Doc. 1, pp. 26-27).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 10 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a

judicial officer of this Court. The following claims shall proceed together in this action:

> **Count 1 –** Marvin used excessive force against Plaintiff on March 20, 2017 when he slammed his hand into the chuckhole and stabbed it repeatedly with the chuckhole key, and Hope, Dennison, Pearl, and Pickford either failed to intervene or approved, condoned or turned a blind eye to the conduct, in violation of the Eighth Amendment;

> **Count 2** – Marvin committed an assault and/or battery against Plaintiff in violation of Illinois State law when he slammed his hand in the chuckhole and stabbed it repeatedly with the chuckhole key;

> **Count 3** – Hope and Wexford Health Sources were deliberately indifferent to Plaintiff's injuries after the March 20, 2017 incident when Hope refused to get him medical attention for 3 days following the events at issue, in violation of the Eighth Amendment;

> **Count 4** – Marvin retaliated against Plaintiff for writing a grievance about the incident by moving him to a cell without power, convincing an unnamed officer to overcharge Plaintiff's trust fund account, and arranging for Plaintiff to be denied his commissary shop in violation of the First Amendment;

> **Count 5** – Dennison retaliated against Plaintiff for filing grievances about this incident by refusing to respond to Plaintiff's grievances in violation of the First Amendment;

> **Count 6 –** Hillard retaliated against Plaintiff for filing grievances when she rejected his grievance regarding his ability to shop at commissary in violation of the First Amendment.

Plaintiff also has attempted to bring other Counts, but for the reasons set forth below, these claims belong in a separate and individual suit. The severed suit will contain the following claims:

> **Count 7 –** Dunning used excessive force against Plaintiff on August 17, 2017 in violation of the Eighth Amendment;

> **Count 8 -** Dunning committed an assault and/or battery against Plaintiff on August 17, 2017 in violation of Illinois state law;

**Count 9** – David and Wexford were deliberately indifferent to Plaintiff's increased back pain after the August 17, 2017 excessive force incident in violation of the Eighth Amendment;

Finally, Plaintiff has attempted to bring a conspiracy claim, but that claim must be dismissed at this time:

**Count 10** – Marvin, Hope, Pickford, Pearl, Dennison, Hillard, Dunning, David and Wexford conspired to retaliate against Plaintiff for reporting the March 20, 2017 incident wherein Marvin allegedly stabbed him with the chuckhole key in violation of the First Amendment**.**

The Court finds that Plaintiff has not adequately stated a retaliation claim in **Count 10**, and that further, he has not stated a claim against Wexford Health Sources. **Count 10** and Wexford will therefore be dismissed for reasons explained below. Additionally, because the remaining claims are misjoined pursuant to Fed. R. Civ. P. 20 and 18, certain claims will be severed into a separate action.

Plaintiff's claims revolve primarily around 2 separate excessive force incidents: the first took place on March 20, 2017 ("March 20th incident"), while the second took place on August 17, 2017 ("August 17th incident"). The fact that each incident was perpetrated by a different guard at a discrete point in time suggests that the incidents are not related. Perhaps to get around this conclusion, Plaintiff has alleged that all of the defendants have engaged in a conspiracy to retaliate against him. The Court does not find Plaintiff's conspiracy allegations plausible.

To plead a § 1983 conspiracy claim, the plaintiff must allege that 1) a state official and a private individual reached an understanding to deprive the plaintiff of his constitutional rights, and 2) those individuals were willful participants in the unlawful activity with the state actor. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). Typically, the evidence must reflect a "concerted effort" between the parties. *Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012). It is not enough for the conspirators to share the same objective, rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result. *Casady*, 735 F.3d at 519 (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir. 1979)). Vague and conclusory allegations do not sustain a plaintiff's burden at the pleading stages. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

All the Defendants in this case are state actors. It is likely that this claim is superfluous and unnecessary. *See Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (finding that the function of a § 1985 conspiracy claim is to "permit recovery from a private actor who has conspired with state actors" and without private actors, the conspiracy claim adds only "needless complexity.")). However, even assuming Plaintiff could allege a valid conspiracy claim among a group of state defendants, he has still failed to make that claim here.

Plaintiff must plausibly allege that the defendants agreed to deprive him of his constitutional rights. Plaintiff's claims regarding Defendants' purported

agreement are all pure speculation. For example, he states that he knew that Hope was conspiring with Marvin because "it seem like the nurse was intentionally avoiding plaintiff cell, as if defendant Marvin knew the physical damage he caused to Plaintiff's righthand and no nurse wanted to document plaintiff's injuries, based on covering up for defendant Marvin." (Doc. 1, p. 4) (grammatical and spelling errors in original). Plaintiff also alleges that the March 20th incident was common knowledge and that other prison staff acted against him because Marvin, Pearl, and Pickford held positions of authority. Phrases like "seems like" indicate that Plaintiff is speculating. *See Rossiter*, 583 F.3d at 970 ("[M]ere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough."). All Plaintiff has alleged factually is that the Defendants are all employees of the prison, and some of them have positions of authority. That is not enough to plausibly allege an agreement to violate Plaintiff's constitutional rights; Plaintiff must point to facts that suggest an agreement. If Plaintiff cannot articulate more concrete facts beyond what it "seemed" like to him, he has failed to state a conspiracy claim.

Moreover, many of the actions that Plaintiff alleges were taken to further the conspiracy do not demonstrate an intent to violate Plaintiff's rights. For example, Plaintiff alleges that Dennison back-dated a grievance, but he does not explain how that action actually harmed him, nor does he allege that the grievance was not heard on that grounds. Plaintiff also alleges that he was overcharged for an ID card, but concedes that the charges were reversed several weeks later. If the

overcharging were truly an act of retaliation, it stands to reason that the officers responsible would not have worked to undo it.

As it specifically relates to the August 17th incident, Plaintiff alleges that his cell was shaken down as an act of retaliation, but his description of the event describes other inmates being shaken down at the same time, making Plaintiff's insinuation that he was being deliberately targeted implausible. Plaintiff further alleges that Dunning acted against him as part of the conspiracy of retaliation, but he never specifically alleges that Dunning knew about the March 20th incident. If Dunning did not know of the incident, he could not have retaliated on that basis or entered into a conspiracy to do so.

In short, Plaintiff's allegations regarding his conspiracy claim are vague and conclusory, and he has not offered any facts which suggest that defendants conspired to retaliate against him. For that reason, the Court dismisses Plaintiff's conspiracy claim without prejudice.

The Court will also dismiss Wexford Health Sources as a defendant at this time. Plaintiff has alleged that Wexford is responsible for the actions of its employees, Hope and David pursuant to a respondeat superior theory of liability. Plaintiff cites to *Shields v. Illinois Department of Corrections*, 746 F.3d 782 (7th Cir. 2014) because the Seventh Circuit indicated in that case that it would be open to reconsidering the doctrine of respondeat superior as to private entities like Wexford. However, to date, the Seventh Circuit has not done so, and the present state of the case law forecloses any relief based on a theory of respondeat

superior in § 1983 litigation. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015). Therefore Wexford will be dismissed with prejudice at this time, although of course, Plaintiff remains free to ask the Court of Appeals to overturn its precedent.

Plaintiff's remaining claims are improperly joined. In *George v. Smith*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b)(g)); *Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (failing to sever mis-joined claims prejudices the United States Treasury); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). A prisoner who files a "buckshot complaint" that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21 or to dismiss improperly joined Defendants. *See Owens v. Hinsely*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Federal Rule of Civil Procedure 20 permits joinder of all claims that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences;

[when] any question of law of fact common to all defendants will arise in the action." That means that a plaintiff cannot join separate claims against different defendants or sets of defendants in the same lawsuit, unless the plaintiff asserts a claim for relief against each defendant that arises out of the same transaction or occurrence or series thereof, and presents common questions of law or fact. *Owens*, 860 F.3d at 436; *George*, 507 F.3d at 607.

Unrelated claims may be joined pursuant to Federal Rule of Civil Procedure 18 where Rule 20 has already been satisfied. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). Therefore, the analysis the Court must perform in determining whether claims are properly joined is twofold: (1) first, a court must determine whether defendants are properly joined pursuant to Rule 20, (2) second, a court may then consider any unrelated claims against one or more of the group of defendants properly joined in the first step.

Without the conspiracy to retaliate claim, the March 20th incident and the August 17th incident have nothing in common factually. The alleged assaults were carried out by different defendants. They occurred 5 months apart. The incidents caused distinct injuries that were treated (or not) by different medical staff. They are part of different transactions. Therefore they are improperly joined pursuant to Fed. R. Civ. P. 20 and should be severed.

In contrast, Plaintiff's claims regarding the aftermath of the March 20, 2017 alleged assault are transactionally related to his claims regarding the assault itself because whether the assault occurred is a factual question that is also relevant to

a determination of whether Marvin and others retaliated against Plaintiff on that ground. Likewise, the nature of Plaintiff's injuries is relevant to both the question of damages on Plaintiff's excessive force claim, and an element he needs to prove on his claim for deliberate indifference to his injured hand, making his claims on those issues transactionally related. The Court will therefore permit Plaintiff's claims regarding Marvin's alleged use of excessive force, and his claims that arise out of other prison staff's response to that incident to proceed together in one lawsuit. But there are no factual elements in common between the March 20th incident and the August 17th incident that would justify those claims proceeding together, and claims involving the August 17th incident must be severed because they are not transactionally related pursuant to Fed. R. Civ. P. 20. Nor does Fed. R. Civ. P. 18 provide any grounds to join Plaintiff's claims regarding the August 17th incident to the claims regarding the March 20th incident because there is not a common defendant between the claim groupings.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims in Counts 7, 8, and 9 into a separate action against Dunning and David. Claims 1-6 against Marvin, Hope, Pickford, Pearl, Dennison, and Hillard regarding the alleged use of force on March 20, 2017 and the aftermath will proceed in this action. The severed case shall have a newly assigned case number, and Plaintiff shall be liable for a new filing fee in the severed action.

Counts 1-6 shall remain in this action. A separate order will be issued in this case to review the merits of those claims. Plaintiff shall be provided with a copy of the merits review order as soon as it is entered. No service shall be ordered on any defendant at this time, pending the § 1915A review.

### Disposition

**IT IS HEREBY ORDERED** that **Count 10** is **DISMISSED without prejudice** for failure to state a claim. Defendant Wexford Health Sources is **DISMISSED with prejudice** on Plaintiff's theory that they are liable pursuant to respondeat superior.

**IT IS HEREBY ORDERED** that Counts 7-9, which are unrelated to Counts 1-6, are severed into a separate case against Dunning and David. Dunning and David shall be terminated from this action. Counts 1-6 against Marvin, Hope, Pickford, Pearl, Dennison, and Hillard shall stay in this case.

The claims in the severed case shall be subject to merits review pursuant to 28 U.S.C. §1915A after the new case number and judge assignment is made. In the new case in this Court, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order;
2) The Complaint (Doc. 1); and
3) The Motion for Leave to Proceed *in forma pauperis* (Doc. 2)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the newly severed cases. No service shall be ordered on the defendants in the severed case until the § 1915A review is completed.

**IT IS SO ORDERED.**

Judge Herndon
2018.05.04
15:45:59 -05'00'

**United States District Judge**